November 5, 1906.

————o————

## No. 3930.

### (Court of Appeal, Parish of Orleans.)

### HIGGINS OIL AND FUEL COMPANY vs. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

1. Interest on damages claimed ex delicto are allowed only from the date of the judgment liquidating the damages.
2. On the merits questions of fact alone are involved.

Appeal from Civil District Court, Divisions A and E.

Saunders & Gurley, for plaintiff and appellee.

Denegre, Blair & Denegre, for defendant and appellant.

MOORE, J. Plaintiff sued to recover $889.74 damages alleged to have been occasioned by the negligent obstruction of the Atchafalaya River at a point therein known as Morgan City during the months of October, November and December, 1902.

The petition alleges that the plaintiff with others had been in the habit of using the said navigable stream for the transportation of oil up the said River; that during the months of October, November and December, 1902, petitioner had contracts and business which required it to transport its oil past and beyond the bridge spanning said river which bridge is maintained and operated by the defendant company; that on the 5th day of October, 1902, through the gross carelessness and neglect of the defendant company's officers and agents the said bridge was injured and rendered in such a condition that

it could not open for navigation. That thereupon, the defendant in order to repair their negligence, blocked the channel of the river and proceeded in a leisurely way to repair the result of their negligence; that during this work it unlawfully and illegally kept the said river completely blocked except for the smallest kind of crafts, for a period extending from the 5th October, 1902, until sometime in the month of March, 1903; that during this time petitioner was unable to carry on its business in the said river or navigate with their tugs, boats and barges, owing to such closing, in the stream; that as a result of the said illegal action of said railroad company, petitioner's loss was as follows:

Oct. 22, 1902, Tug "Jno. N. Gilbert" delayed 30 hours,
    at $100.00 per day.............................$125.00
Oct. 22, 1902, Barge "Spindletop" delayed 30 hours,
    at $25.00 per day............................ 31.25
Nov. 13, 1902, Tug "Jno. N. Gilbert" delayed 24 hours,
    at $100.00 per day.... ...................... 100.00
Nov. 13, 1902, Barge "Spindletop" delayed 24 hours,
    at $25.00 per day........... .............. ...... 25.00
Dec. 12, 1902, Tug "Jno. N Gilbert" delayed 24 hours,
    at $100.00 per day........:..................... 100.00
Dec. 12, 1902, Barge "Spindletop" delayed 24 hours,
    at $25.00 per day............................ 25.00
Dec. 25, 1902, Tug "Jno. N. Gilbert" delayed 24 hours,
    at $100.00 per day........... .............. ... 100.00
Dec. 25, 1902, Barge "Spindletop" delayed 24 hours,
    at $25.00 per day........... .................. . 25.00

                                                        $531.25

That in addition to the delay petitioner was compelled to have its oil lightered and carried beyond the said bridge at an expense as follows:

Oct. 31, 1902—1309 bbls. lightered and pumped.......$ 65.45
Nov. 13, 1902—170,255 bbls. lightered and pumped.. 85.13
Nov. 22, 1902—355,831   "      "      "    .... 177.91
Jan'y 15, 1903—Towing oil barge "Sour Lake" and
    barge "Spindletop" to bank and returning barge
    to bridge....... ....... ..... ....................... 30.00

                                                        $358.49

The defendant answered, pleading the general issue and

averring that if any damage was suffered by plaintiff the same proceeded directly and proximately from defendant's legal and duly authorized work of repairing the broken bridge and constituted *damnum absque injuria*, and that defendant exerted the utmost diligence and expedition in making the necessary repairs to the bridge in the interest of navigation; and finally the plea of prescription of one year was interposed to each and every item sued for.

There was judgment in favor of the plaintiff for $733.49, the items of date Oct. 22, 1902, amounting to $156.25 being prescribed at the date of filing suit, Oct. 26, 1903. From this judgment the defendant appealed. We are relieved from the necessity of passing upon the only question of law involved in the case, to-wit, whether the damages alleged constituted *damnum absque injuria* forasmuch as that question was resolved in the negative, since the institution of this suit, by the Supreme Court in the case of Pharr vs. Morgan's L. & T. R. & S. S. Co. 115 La. 138.

The only question therefore remaining is one of fact, *ed est* the amount of damages proven.

The evidence in the record is voluminous and quite confusing, but we have examined it with great care as did our esteemed brother of the lower Court as evidenced by his carefully prepared opinion which we find in the record and reproduced here. It is as follows:

### REASONS FOR JUDGMENT.

"Since the argument last summer the Supreme Court have settled, by judgment in another case, the liability of the defendant for obstructing the navigation at the Morgan City railroad bridge, so that the issues are reduced to two:

"1st. Whether plaintiff was damaged as claimed, and

"2nd. In what amount.

"The briefs and record reached me some weeks ago, and I have examined carefully the case.

"1st I have no doubt that plaintiff was damaged. Their oil tank, 30 feet high, and 35 feet 11 inches in circumference, with a holding capacity of 55,000 barrels of oil, was located above the railroad bridge. They transported oil from Texas, and their barges passed through the bridge, pumped it into said tank from whence it was pumped into lighter crafts, and delivered to customers. This was the usual course of bus-

38

iness, and a delay of six hours in transferring the oil from barge to tank was all that was required. By this plan, their tug and barges could be kept going in their work of transporting their oil. The proof is ample, that seagoing vessels, i. e., vessels capable of the trip, could not pass the bridge after it was broken in, and navigation was interrupted, so that, to store their oil in tanks it had to be pumped from the barges bringing it to smaller vessels, and by the latter transferred to the tank. The statement of the facts could not be strengthened by argument that all this caused damage.

"2nd. The amount of damage is the next question.

"The evidence shows that there was a delay of 150½ hours, or 6¼ days over the usual delay of six hours, for each trip, which is a greater delay than plaintiff has claimed. The value, per day, of the time and service of the tug and barge are proved, as alleged. This would show a damage of $780.00, whereas the plaintiff only claims $531.25.

"I have carefully read and analyzed all the testimony on the subject, and I have been convinced that the testimony of Captain Christensen is correct. He was in charge, and speaks from the log book and memoranda kept, and is positive, and is corroborated by others, and by the reasonable probabilities of the case.

"I do not care to comment on the depositions given in rebuttal, more than to say they have not overthrown the positive evidence brought by plaintiff. Beliefs, no matter how emphatic their statement, are not evidence, and people who were about, and who saw and think they know all, are not as reliable, even conceding perfect good faith and truth, as those whose business it was to be in charge and to keep records of time, and service and particulars, and those who did this sustain the plaintiff's claim.

"The account of $358.49 for barrels of oil lightered and pumped and for towing two barges is positively proved. The witness McCoy annexes the receipt tickets, four in number, given at the tank. They are annexed just under the outer cover of the depositions, and their dates and particulars corroborate and fix this account, as claimed by the plaintiff. Captain Dalton is relied on in rebuttal, and he gives the record kept by him, from reports made to him, he being generally in command. with captains for his vessels who reported to him.

39

His account corroborates plaintiff as to the items of November 13 and November 22, 1902, but does not give the other items. What he omits, in the way of items, only shows he did not keep all the accounts, because the witness, C. P. Wallis proves the payment of all the amounts corresponding precisely with the plaintiff's account.( See his answer to Int. 4).

"On all the evidence, which I have read and studied with care, assisted by the briefs on both sides, I have no doubt of the correctness of plaintiff's claim.

"Defendant pleads the prescription of one year, and I find it well taken to the first two items of plaintiff's account, of date October 22, 1902, amounting to $156.25. Deducting this amount prescribed, leaves plaintiff entitled to $733.49, for which, and interest as claimed on the items allowed, judgment should be rendered.

"I have considered the very able argument of defendant's counsel, suggesting that the delays charged for could have been minimized, and to a good extent avoided. I recognize the rule that diligence must be shown, and that all effort to minimize damage must be made, but I do not see whence plaintiffs have failed in their duties. It was not in their power to notify lighters, in advance of the exact date of the arrival of their barges. To have engaged them in advance of arrival would have increased the expenses for the time of vessels is precious, and counted by hours. Looking at the situation, as disclosed by the record, it seems to me that the plaintiffs did the best in their power, when their usual course of business was interrupted by the obstruction of the navigation, which cut them off from their storage tank. They had to unload into lighter barges and wait their trips to and from the tank. Delivery to customers as subjects of charge are not in the case.

"This much will indicate my impression of the case drawn from all the facts proved.

"Judgment accordingly has been entered."

Whilst we concur, generally, with our brother's appreciation of the evidence our study of it has lead us to a different conclusion as to three items in the account sued on. The evidence does not sustain a delay of 24 hours of the Tug "Gilbert" and the barge "Spindletop" on Nov. 13th, 1902. The longest delay which we can estimate from the date given is 12

hours; so that this item must be reduced from $125.00 to $62.50.

. We have searched in vain for any evidence whatsoever as to the delay of this tug and barge on the 12th December, 1902. There should have been a non suit as to this item amounting to $125.00; and, finally the proof as to the item Jan'y. 15th, 1903, towing oil and barge "Sour Lake" and barge Spindletop to bank and returning to bridge $30.00 is too vague, general and uncertain to base a judgment on. This item should have been rejected as of non suit. All other items we think have been conclusively proven and were properly allowed. These deductions would reduce the judgment, in principal, to $517.99. The judgment allows interest from the date of each delay whereas it is well settled that interest on damages claimed ex delicto should be allowed only from the date of judgment. In this particular the judgment must also be amended.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing the principal sum awarded from $735.49 to $517.99; by striking out therefrom all items of interest allowed, and substituting therefor legal interest on the said sum of $517.99 from the date of judgment in the lower Court until paid; that so far as concerns the items sued for under date of Dec. 12th, 1902 and Jan'y. 15th. 1903, the same be rejected as in case of non suit and that as thus amended· the judgment be affirmed. The costs of appeal to be taxed against the plaintiff and appellee.